# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **ERIC ARNOLD,** | ) | **CASE NO.   1:17 CV 279** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| | ) | |
| **CAROLINE HURWITZ,** | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| **Defendant.** | ) | |

This matter is before the Court on the Motion for Summary Judgment filed by Defendant, Caroline Hurwitz. (Docket #27.) Pursuant to Fed. R. Civ. P. 56, Ms. Hurwitz seeks summary judgment as to the malicious prosecution and defamation claims asserted against her by Plaintiff, Eric Arnold.

## I.    Factual and Procedural Background.[1]

Beginning in 2009, Mr. Arnold and Ms. Hurwitz, both high school students at Hawken School, had a number of "encounters" or "hook-ups" ranging from kissing to oral sex. (Docket

---

[1]     The facts as stated in this Memorandum Opinion and Order are taken from the Parties' submissions. Those material facts that are controverted and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to the non-moving Party.

#27 at p. 2.) Mr. Arnold and Ms. Hurwitz were not "boyfriend/girlfriend or dating" and both characterize their relationship as "casual." The encounters were infrequent, often arranged via text messaging, and consensual. Ms. Hurwitz characterizes these encounters as "routine" but states that "during each encounter . . . Mr. Arnold always wanted more." (Id.)

In late October 2012, Mr. Arnold, who had graduated from Hawken earlier that year, and Ms. Hurwitz, then in her Junior year at Hawken, arranged to meet at a party at the home of a fellow Hawken student where both expected to have another "encounter" prior to Mr. Arnold leaving on a trip to Europe. (Docket #27 at p. 2.) On October 27, 2012, Mr. Arnold and Ms. Hurwitz met at the party as planned. At approximately 11 p.m. that evening, Ms. Hurwitz and Mr. Arnold went upstairs into an empty bedroom and proceeded to engage in various sexual acts, the majority of which neither party disputes were consensual. Ms. Hurwitz alleged that during this encounter, she was raped by Mr. Arnold, which Mr. Arnold denies. After the alleged rape, Ms. Hurwitz left the party, drove to her home, told her parents she was raped, and proceeded to the hospital. (Id. at pp. 3-4.) Ms. Hurwitz was examined by a nurse trained to deal with the victims of sexual assault and the hospital reported the alleged incident to authorities. (Id. at p. 4.)

On November 15, 2012, Ms. Hurwitz met with Patrol Sergeant Kimberly Libens of the Chagrin Falls Police Department and filed a Witness Statement, detailing her allegations of rape. (Id.) Detective Timothy Reed was the lead investigator on the case and he, along with Sgt. Libens, investigated Ms. Hurwitz's claims. (Id.) Mr. Arnold, whose parents had been informed of the allegations within the days after the encounter and had flown home from Europe, declined to meet with the Police. (Id. at p. 5.) With regard to his investigation, Detective Reed testified

during his deposition, "You asked me if I was able to substantiate the sexual assault. I wasn't in the room when that happened, so I had to – I went on Ms. Hurwitz's statement to us. I couldn't substantiate the fact that this occurred or didn't occur, but there are other facts that were reported to us through our investigation that I was able to substantiate. . ." (Deposition of Detective Timothy Reed at pp. 37-38.) Detective Reed explained that he visited the home where the encounter occurred and was able to "substantiate where this incident occurred" and confirmed that the bedroom door could not be opened from the inside, as reported by Ms. Hurwitz. During his deposition, Detective Reed agreed that after reviewing documentation from the emergency room from the night of the alleged rape, Ms. Hurwitz's Witness Statement, and any other available evidence, he found no issues nor was he concerned with the veracity of Ms. Hurwitz's statements.

Detective Reed referred the case to the Cuyahoga County Prosecutor's Office and the case was presented to the Cuyahoga County Grand Jury.[2] The Parties do not dispute the fact that Detective Reed testified before the Grand Jury, although he does not remember doing so. Ms. Hurwitz did not testify before the Grand Jury. On February 21, 2013, the Grand Jury returned an indictment against Mr. Arnold, including charges of felony rape and kidnapping. *State of Ohio*

---

[2]

On October 6, 2017, Mr. Arnold filed a Motion for Order Releasing Grand Jury Transcripts with this Court. (Docket #22.) On February 15, 2018, this Court denied said Motion, and directed Mr. Arnold to file his request with the Cuyahoga County Court of Common Pleas. (Docket #37.) On May 9, 2018, Cuyahoga County Court of Common Pleas Judge Kathleen Ann Sutula issued an Order denying Mr. Arnold's request. The Court stated, "In an abundance of caution, the Court ordered the Grand Jury transcript and conducted an in camera inspection review . . . After careful assessment and deliberate consideration of all briefs, exhibits, and deposition testimony, the Court cannot conclude that releasing the Grand Jury transcripts would further Mr. Arnold's interests, nor prevent a miscarriage of justice. There is nothing in the transcript which would support a lack of probable cause in indicting Mr. Arnold on the aforementioned charges."

*v. Eric Arnold*, Cuyahoga County, Ohio Case No. CR-13-570388-A. Mr. Arnold pled not guilty.
A jury trial began on April 1, 2014. On April 16, 2014, the jury returned a verdict of not guilty
on all counts.

On April 8, 2016, an article/essay written by Ms. Hurwitz, titled "When Moving Forward
Means Stepping Back" ("the Article/Essay"), was published both online and in print in the New
York Times' "Modern Love" column. (Deposition of Caroline Hurwitz, Exhibit 4.) In the
Article/Essay, Ms. Hurwitz, who is identified as the author and a junior at Colgate University,
recounts the impact the alleged rape had on her and her long-distance relationship with another
man with whom she was involved at the time at the time of the alleged rape. Ms. Hurwitz did
not reference Mr. Arnold by name, but referenced the fact that she was raped and referred to her
"rapist" several times. Ms. Hurwitz wrote, "In October of my senior year . . . I was raped by the
older brother of an acquaintance;" "A new life was waiting for me just months away, on a
college campus where nobody would know I had been raped, where I didn't have to sweat every
time I went to my grocery store, terrified my rapist was round the corner;" "I wanted to leave the
rape far behind;" "Nearly a year later, during the criminal trial of the man that raped me;" "At the
trial, my rapist had been found not guilty;" and, "Part of their strategy was to imply I had cried
rape because I had cheated on my boyfriend and wanted to be excused for it - complicated lies to
muddy a clear crime."

On November 9, 2016, Mr. Arnold filed his Complaint against Ms. Hurwitz in the
Cuyahoga County Court of Common Pleas, Case No. CV-16-871642, setting forth claims for
malicious prosecution and defamation. Mr. Arnold alleges that Ms. Hurwitz negligently,
knowingly, falsely and/or with malice, signed a police statement stating that Mr. Arnold engaged

-4-

in sexual conduct with Ms Hurwitz on October 27, 2012, by force and against her will. Mr. Arnold states that the false and defamatory statements were communicated to the Chagrin Falls, Ohio Police Department and to the Cuyahoga County, Ohio Prosecutor's Office and caused a malicious criminal prosecution to be instituted and continued against him. Further, Mr. Arnold alleges that the statements made by Ms. Hurwitz in the New York Times Article/Essay that she was "raped" were false and defamatory. On February 10, 2017, Ms. Hurwitz removed the case to Federal Court pursuant to this Court's diversity jurisdiction.

On January 1, 2018, Ms. Hurwitz filed her Motion for Summary Judgment. (Docket #27.) On February 1, 2018, Mr. Arnold filed his Memorandum in Opposition to Ms. Hurwitz's Motion for Summary Judgment. (Docket #32.) On February 9, 2018, Ms. Hurwitz filed her Reply Brief. (Docket #34.) The matter is fully briefed and ready for disposition.

## II.     Standard of Review.

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires

consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne. Inc.*, 48 F.3d 937, 941 (6th Cir. Ohio 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. Mich. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. Ky. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

As a general matter, the district judge considering a motion for summary judgment is to

examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson,* 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

## III. Discussion.

### A. Malicious Prosecution.

In order to state a cause of action for malicious prosecution in Ohio, the plaintiff must allege, "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Trussell v. General Motors Corp.,* 53 Ohio St. 3d 142, 559 N.E.2d 732, at syllabus p. 142 (1990).

Probable cause is defined as:

> [a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.

*Huber v. O'Neill,* 66 Ohio St.2d 28, 30, 419 N.E.2d 10 (1981) (quoting *Melanowski v. Judy,* 102 Ohio St. 153, 156, 131 N.E. 360 (1921)). The indictment of the accused by a grand jury is

ordinarily *prima facie* evidence of probable cause and the plaintiff in a malicious prosecution

case has the burden of producing substantial evidence to rebut this presumption. *Deoma v.*

*Shaker Heights*, 68 Ohio App. 3d 72, 77, 587 N.E.2d 425 (8th Dist. 1990).

Malice in the context of a malicious prosecution action is defined as:

> the state of mind under which a person intentionally does a wrongful act without a reasonable lawful excuse and with the intent to inflict injury or under circumstances from which the law will infer an evil intent. **For purposes of malicious prosecution it means an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice.**

*Criss v. Springfield Twp.*, 56 Ohio St.3d 82, 84-85, 564 N.E.2d 440 (1990)(emphasis added).

Malice can be inferred where there is a lack of probable cause. *Melanowski v. Judy*, 102 Ohio

St. 153, 131 N.E. 360 (1921)("In actions for malicious prosecution, while malice is an essential

element, the want of probable cause is the real gist of the action. If want of probable cause be

proven, the legal inference may be drawn that the proceedings were actuated by malice."

*Melanowski*, 102 Ohio St. 153, 155.)

"A private citizen can be held liable for malicious prosecution even where criminal

charges were filed by police authorities." *Wallace v. Noel*, 2009-Ohio-6984, at Paragraph 43 (6th

Dist. 2009) (citing *Archer v. Cachat*, 165 Ohio St. 286, 287-88; 3 Restatement of the Law 2d,

Torts (1977) 406, Section 653, Comments d and g); see also *Donohoe v. Burd*, 722 F. Supp.

1507, 1519 (S.D. Ohio 1989). As set forth in 3 Restatement of the Law 2d, Torts:

> § 653 Elements of a Cause of Action
> A private person who initiates or procures the institution of criminal proceedings against another who is not guilty of the offense charged is subject to liability for malicious prosecution if
> (a) he initiates or procures the proceedings without probable cause and primarily for a purpose other than that of bringing the offender to justice, and

(b) the proceedings have terminated in favor of the accused.

Comment g to Section 653 provides as follows:

g. Influencing a public prosecutor. A private person who gives to a public official information of another's supposed criminal misconduct, of which the official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving the information or even making an accusation of criminal misconduct does not constitute procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not. **When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable under the rule stated in this Section even though the information proves to be false and his belief was one that a reasonable man would not entertain.** The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information proves to be false and his belief was one that a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protect from liability the person whose information or accusation has led the officer to initiate the proceedings.

**If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information. In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear** that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or **that the information furnished by him upon which the official acted was known to be false**.

Restatement of the Law 2d, Torts (1977) 406, Section 653, Comment g. (Emphasis added.)

## B. Defamation.

Defamation under Ohio law requires (1) a false and defamatory statement concerning

another; (2) an unprivileged publication to a third party; (3) fault amounting to at least

negligence on the part of the publisher; and, (4) either actionability of the statement irrespective

of special harm (such as defamation *per se*) or the existence of special harm caused by the

publication. *See Fitzgerald v. Roadway Express, Inc.*, 262 F. Supp. 2d 849, 855 (N.D. Ohio

2003) (citing *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Servs., Inc.*, 81 Ohio App.3d 591,

601, 611 N.E.2d 955 (9th Dist. 1992)); *Shoemaker v. Community Action Org. of Scioto City, Inc.*,

2007 Ohio 3708 (Ohio Ct. App., Scioto County, 2007); *Gosden v. Louis*, 116 Ohio App. 3d 195,

687 N.E.2d 481 (Summit County 1996).

> As set forth in *Gosden* and relevant to this case:
>
> A plaintiff need not have been specifically named in a libelous statement to have
> been defamed. *See Shimola v. Cleveland*, 65 Ohio App. 3d 457, 462, 584 N.E.2d
> 774 (1989). The focus of whether a particular person has been defamed is upon
> whether recipients of the communication understood it to refer to that person. **If a**
> **recipient understood that the plaintiff was the person to whom the defendant**
> **intended to refer, and the plaintiff was in fact the person to whom the**
> **defendant intended to refer, the plaintiff has been defamed "even though he**
> **is so inaccurately described that it is extraordinary that the communication is**
> **correctly understood."**

*Gosden*, 116 Ohio App. 3d 195, 218 (quoting Restatement of the Law 2d, Torts (1977) 165,

Section 564, Comment a.)(Emphasis added.)

"Written matter is libelous *per se* if, on its face, it reflects upon a person's character in a

manner that will cause him to be ridiculed, hated, or held in contempt; or in a manner that will

injure him in his trade or profession." *Gosden*, 116 Ohio App. 3d 195, 207. A writing that

accuses a person of committing a crime is libelous *per se*. *Akron-Canton Waste Oil, Inc. v.*

*Safety-Kleen Oil Serv., Inc.*, 81 Ohio App. 3d 591, 601, 611 N.E.2d 955 (9th Dist.1992); see also

*State v. Smily*, 37 Ohio St. 30, 32-33 (1881).

## IV. Conclusion.

The Court has reviewed the entire record in this case at length, including a thorough review of all of the reports, deposition transcripts, briefing and exhibits offered by the Parties. Genuine issues of material fact preclude summary judgment as to both Mr. Arnold's malicious prosecution and defamation claims. Ms. Hurwitz alleged that she was raped by Mr. Arnold. Mr. Arnold was later indicted, pled not guilty, and ultimately acquitted following a jury trial in State court. Mr. Arnold has at all times maintained that the encounter in question was entirely consensual. While an indictment is ordinarily *prima facie* evidence of probable cause in a malicious prosecution action, Mr. Arnold's case rests on the assertion that Ms. Hurwitz falsely reported a crime to authorities; that based on that allegedly false information it was impossible for law enforcement authorities and the Grand Jury to make an informed decision; and, therefore, that Mr. Arnold's prosecution was unlawfully procured by Ms. Hurwitz. A jury must resolve the question of whether Ms. Hurwitz believed she was raped by Mr. Arnold or, stated differently, knew that the allegations of rape were false, when she reported the alleged crime to authorities.

Furthermore, questions regarding the truth or falsity of the allegations made by Ms. Hurwitz against Mr. Arnold speak directly to whether the New York Times Article/Essay was defamatory and, under Ohio law, Ms. Hurwitz's New York Times Article/Essay need not specifically reference Mr. Arnold by name if it can be proven that a reader understood that her references to her rapist and the alleged rape, set forth throughout the Article/Essay, were about Mr. Arnold.

Accordingly, the Motion for Summary Judgment filed by Defendant, Caroline Hurwitz (Docket # 27) is hereby DENIED.

-11-

A trial remains set for October 2, 2018 at 8:30 a.m. in Courtroom 15A.

IT IS SO ORDERED.

_____

DONALD C. NUGENT
United States District Judge

DATED: August 6, 2018